**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
FRANTZ JEAN,

                    Plaintiff,                    **OPINION & ORDER**

              - against -

                                                    08-CV-00157 (RER)

THE CITY OF NEW YORK, POLICE OFFICER
OTTOMANELLI, and JONATHAN MONTINA,

                    Defendants.
-------------------------------------------------------------X

**RAMON E. REYES, JR., U. S. M. J. :**

       Plaintiff Frantz Jean ("Jean") brought this action against Defendants City of New York ("the City"), Police Officer Christopher Ottomanelli ("Ottomanelli"), and Jonathan Montina ("Montina") for injuries he allegedly sustained when Jean was arrested and prosecuted for assaulting Montina. Jean claimed under 42 U.S.C. § 1983 that he was falsely arrested, falsely imprisoned, and maliciously prosecuted in violation of his constitutional rights, and the laws and statutes of the State of New York and the City of New York. In addition, he is suing the City under a theory of respondeat superior. The City has moved for summary judgment on all claims. This Court has jurisdiction because this case presents a federal question, *see* 28 U.S.C. § 1331, and seeks to redress an alleged deprivation of Jean's civil rights, *see* 28 U.S.C. § 1343(a)(3). The parties have consented to have me preside over the case, pursuant to 28 U.S.C. § 636(c). (Docket Entry 10.) For the reasons discussed below, Defendants' motion is granted, and Jean's complaint is dismissed in its entirety.

BACKGROUND

This case involves conflicting accounts of a fight in the men's restroom at a high school in Brooklyn. Although the parties' accounts of what happened differ, the facts must be presented in the light most favorable to the non-moving party on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Jean's version of the facts will therefore be credited below.

At the time of the events giving rise to this action, Jean and Montina were students at Midwood High School in Brooklyn, New York. (Plaintiff's Local Rule 56.1 Counter Statement of Material Facts ("Pl.'s 56.1 Stmt.") ¶ 2.) On March 18, 2006, Montina had his cell phone taken by a group of boys at a pizzeria where Jean was eating. (Pl.'s Ex. 1, Jean Affidavit ("Jean Aff.") ¶ 5.) Montina confronted Jean, who denied having taken the phone and said he did not know who had taken it. (*Id.*) Two days later, Montina and two of his friends interrupted Jean's English class and demanded that he return Montina's phone. (*Id.* ¶ 7.) Montina's friends were known gang members, and the group threatened to hurt Jean if he did not return Montina's phone. (*Id.* ¶ 7.)

During the lunch hour that same day, Jean and Montina got into a fight in the men's restroom. Jean was in the bathroom with two of his friends, Travis Fabien and Raymond [Bastien], when Montina and his friends entered the bathroom. (*Id.* ¶ 9.) Montina started swinging at Jean, who defended himself by swinging back and eventually punching Jean in the face, near his eye. (Pl.'s Ex. 2, Jean Deposition ("Jean Dep.") at 29.) Jean's friends broke up the fight, and Dean Richard Franzese ("Dean Franzese") reported the incident to the New York Police Department, pursuant to school policy. (Pl.'s Ex. 1, Jean Aff. ¶ 11.) Upon arriving at

Midwood High School, Officer Ottomanelli learned from Dean Franzese that there had been an altercation inside one of the men's bathrooms. (Pl.'s Ex. 3, Ottomanelli Deposition ("Ottomanelli Dep.") at 10: 5–8.) Ottomanelli spoke with Montina first and observed that he had a substantial injury to his eye. (*Id*. at 10: 10–15.) Montina told Ottomanelli that he had gone to speak to Jean about a cell phone that had been taken a few days earlier. (*Id*. at 11: 4–6.) When asked why he did not report it earlier, Montina responded that he knew who had taken the phone and was going to try to get it back at school on Monday. (*Id*. at 11: 7–13.) Montina then identified Jean as the person who injured his eye. (*Id*. at 12: 21–23.)

Ottomanelli never questioned Jean to get his side of the story. (Pl.'s Ex. 1, Jean Aff. ¶ 12.) Jean tried telling Ottomanelli that he was the innocent party and that Montina had attacked him, but Ottomanelli did not listen to him. (*Id*. ¶ 12.) Ottomanelli did not speak to the other students who had witnessed the fight. (Pl.'s 56.1 Stmt. ¶¶ 9, 10.) Although there were available statements written by faculty members that described the earlier events of the day, Ottomanelli was not aware of either those statements or statements written by the parties and other witnesses to their fight, and he did not seek to learn about them. (*Id*. ¶ 22.) After arresting Jean and searching his book bag, Ottomanelli recovered a box-cutting knife. (*Id*. ¶ 25.)

Ottomanelli arrested Jean on March 20, 2006, on charges of robbery, assault, and criminal possession of a weapon. (Defs' Ex. E, N.Y.P.D. Online Booking System Arrest Worksheet.) On March 21, 2006, Jean was arraigned (Pl.'s Ex. 2, Jean Dep., at 50: 7–15) and released on $350 bail. (Pl.'s 56.1 Stmt. ¶ 27.) A grand jury indicted Jean on one count of assault in the third degree on June 7, 2006. (Defs' Ex. F, Indictment.) Ottomanelli testified before the grand jury, but did not testify during Jean's criminal trial on June 8, 2007. (Pl.'s Ex. 3, Ottomanelli Dep. at

24: 9–10.) Jean was acquitted of all charges against him on September 21, 2007. (Defs' Ex. G, Certif. of Disp.) Jean and his mother made over twenty appearances in court during the period of March 20, 2006 through September 21, 2007, resulting in his missing substantial amounts of school time and school work, including an important college entrance exam. (Pl.'s Ex. 1, Jean Aff. ¶ 15.)

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted when the Court determines that there is no genuine issue of material fact after viewing the evidence in the light most favorable to the non-movant. *See* FED. R. CIV. P. 56; *Bickerstaff v. Vassar College*, 196 F.3d 435, 444 (2d Cir.), *cert. denied*, 530 U.S. 1242 (2000). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material issue of fact." *See* FED. R. CIV. P. 56(c); *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir. 1993). A motion for summary judgment cannot rest on conclusory or speculative allegations, but must be based on concrete particulars. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997).

The non-moving party must offer evidence showing that issues of fact exist that must be decided by a fact-finder because they may reasonably be decided in favor of either party. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where no such showing is made, 'the moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Lujan*, 497 U.S. at 884 (citations omitted).

ANALYSIS

Defendants' motion must be granted because Ottomanelli is shielded from suit by his qualified immunity, and as discussed more fully below, Ottomanelli had probable cause to arrest Jean.

I. Qualified Immunity Shields Officer Ottomanelli's Actions from Suit

Whether qualified immunity exists should be decided on a motion for summary judgment whenever possible to save defendants the trouble of undergoing discovery. *Mahwirt v. Ahmed*, 86 F. Supp. 2d 81, *aff'd in part, vacated on other grounds*, 2001 U.S. App. LEXIS 10467 (2d Cir. May 17, 2001); *Rowe v. Romano*, 940 F. Supp. 798, 802 (3d Cir. 1996) ("when the material facts are not disputed, we may decide whether the officer is shielded by qualified immunity as a matter of law"). This Court has established that Ottomanelli arrested Jean with probable cause. Even if cause had been lacking, however, Ottomanelli would be entitled to qualified immunity.

Police officers are entitled to qualified immunity from suit unless their "judgment was so flawed that no reasonable officer would have made a similar choice." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004); *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). As long as an officer's conduct did "not violate clearly established constitutional rights, or it was objectively reasonable for them to believe their acts did not violate those rights," an officer's actions do not expose him to suit. *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The right to be free from arrest or prosecution in the absence of probable cause is a constitutional right. *Loria v. Gorman*, 306 F.3d 1271, 1291 (2d Cir. 2002) (citation omitted).

Jean argues that his constitutional right to be free from arrest or prosecution without probable cause was violated, and therefore Ottomanelli cannot assert qualified immunity because it was not objectively reasonable for him to believe there was probable cause to arrest. (Plaintiff's Memorandum of Law in Opposition to Summary Judgment Motion ("Pl.'s Mem.") at 19-20.) However, the discussion below establishing that Ottomanelli had probable cause to arrest Jean applies here. Ottomanelli's actions were objectively reasonable because it is undisputed that he directly observed Montina's injuries and had Montina identify Jean as his aggressor. Ottomanelli's failure to interview Jean or corroborate Montina's allegations does not undercut his probable cause to arrest Jean. An arrest made with probable cause entitles the arresting officer to qualified immunity for his actions.

    II.     Jean's False Arrest and False Imprisonment Claims

"The elements of false arrest under [s]ection 1983 are substantially the same as the elements under New York law[,] and their analysis is identical." *Batson-Kirk v. City of New York*, No. 07-cv-1950, 2009 U.S. Dist. LEXIS 44841, at *13 (E.D.N.Y. May 28, 2009) (citing *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003)). Under New York law, the elements of a false arrest or false imprisonment claim are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Weintraub v. Board of Educ.*, 423 F. Supp. 2d 38, 53 (E.D.N.Y. 2006). A successful false arrest or false imprisonment claim therefore requires that a plaintiff show that the arresting officer acted without probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) ("under both New York and federal law, summary judgment

dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable."); *Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

The only contested issue with respect to the false arrest and imprisonment claims is whether Ottomanelli conducted a sufficient investigation to have probable cause to arrest Jean. Whether probable cause existed is ordinarily a question of fact for the jury, but may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996); *see also Collom v. Freeport*, 691 F. Supp. 637, 640 (E.D.N.Y. 1988) ("the existence of competing accounts cannot of itself render the issue of probable cause a jury question...[i]f the mere existence of a 'swearing contest' permitted a jury to reexamine an officer's decision, law enforcement officials would be discouraged from taking any action at all.").

Police officers enjoy considerable discretion when making arrests. "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). Even if the charges brought were eventually dismissed, that does not mean that probable cause did not exist for the original arrest. *Warren v. Byrne*, 699 F.2d 95, 98 (2d Cir. 1983). An officer only needs to have probable cause, based on the totality of the circumstances, that a crime has been committed to make a warrantless arrest. *See Illinois v. Gates*, 462 U.S. 213 (1983); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Probable cause is determined by looking at the facts available to the police at the time of arrest. *Lowth*, 82

F.3d at 569. Therefore, explanatory circumstances that occurred before the arrest may not be included in an officer's probable cause determination.

There is no checklist of tasks an arresting officer must undertake to guarantee probable cause. The Second Circuit has addressed similar assault cases where the arrested party acted with justification and other cases where the parties presented competing accounts. *See, e.g., Rennols v. City of New York*, No. 00-cv-6692, 2003 U.S. Dist. LEXIS 18908, at *10 (E.D.N.Y. Oct. 23, 2003), *aff'd* 2005 U.S. App. LEXIS 4595 (2d Cir. Mar. 21, 2005) ("It is immaterial that a more thorough investigation by [an officer] might have revealed that [a plaintiff] really did [have a justification for his conduct that would have negated probable cause].... [a] contrary holding would put an unfair burden on law enforcement officers...") (citing *Krause v. Bennett*, 887 F.2d 362, 371–72 (2d Cir. 1989)); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest."). In sum, once an officer reasonably believes that a crime has been committed, he has sufficient probable cause to arrest a suspect, even if there are other facts that may justify the suspect's behavior. *Ricciuti v. N.Y.C. Transit*, 124 F.3d 123, 128 (2d Cir. 1997) (relieving the police of any duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest") (citing *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979)).

That said, an officer may not deliberately disregard facts known to him that establish self-defense. *Jocks v. Tavernier*, 316 F.3d 128, 134–36 (clarifying *Ricciuti*). The court limited the holding of *Ricciuti* by stating that "under some circumstances, a police officer's *awareness of the*

*facts* supporting a defense can eliminate probable cause." *Jocks*, 316 F.3d at 135 (emphasis added). In *Jocks*, a police officer claimed that a truck driver had approached and harassed him while he was using a pay phone, eventually throwing the handset at his face. *Id.*, at 133. The driver admitted to throwing the handset, but in response to the officer's drawing his gun and threatening to shoot him, after the two men had argued over who could use the phone. *Id*. Neither party disputed that the elements of assault were present, but the court concluded that the officer "should have known that [the plaintiff] was acting in self-defense" when the officer himself was in the fight. *Id.*, at 136. The Second Circuit has made the subtle distinction between an officer's officer's "deliberately disregarding facts known to [him] which establish justification," which is prohibited, and an officer's simply "failing to uncover facts helpful to the Plaintiff," which is permissible. *See, e.g, Rennols*, 2009 U.S. Dist. LEXIS 44841, at *13.

This case presents a close question. On one hand, Defendants contend that Ottomanelli easily had enough probable cause to arrest Jean. (City Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs' Mem.") at 5.) According to Ottomanelli, "Mr. Montina had substantial injuries to his eye and stated and identified Frantz Jean as the person who committed these injuries or inflicted these injuries on him." (Pl.'s Ex. 3, Ottomanelli Dep., at 26: 20–24.) "Through the physical evidence and from the victim's statements[,] I believed I had enough probable cause to make an arrest." (*Id.* at 27: 23–25.) Critically, Ottomanelli stated, "There is also no statement made by Mr. Jean that he was ever struck by Mr. Montina. He never made a statement to me that he was struck or that he was assaulted by Mr. Montina." (*Id*. at 17: 12–15.) The City argues therefore that Ottomanelli had no reason to believe Jean acted in self-defense when striking Montina.

On the other hand, Jean argues that Ottomanelli conducted an insufficient investigation to establish probable cause for any of his charges given the circumstances of this case. (Pl.'s Mem. at 8–10.) The only information Ottomanelli knew about the situation before speaking with Montina was that there had been an altercation in a high school restroom (Defs' Ex. D., Ottomanelli Dep., at 8: 9–10); after asking Montina what the altercation was about, Officer Ottomanelli learned that "[Montina] went to speak to Mr. Jean about a cell phone that had been taken a couple of days prior." (Pl.'s Ex. 3, Ottomanelli Dep. at 11: 3–6.) He asked Montina why he did not report the stolen phone and learned that "[Montina] was going to try to get it back at school on Monday because he had known the person that took the cell phone on the previous date." (*Id.* at 11: 10–13.) This information, Jean argues, should have suggested to Ottomanelli that Jean may have had a reason to defend himself. (Pl.'s Mem. at 9.) Most importantly, it is unclear whether Ottomanelli ever interviewed Jean to get his version of events or to corroborate that he assaulted Montina. (*Id.* at 8.) After interviewing Montina, Ottomanelli claimed that he "spoke shortly after to Mr. Frantz Jean," but also that he spoke to Jean "only after he was placed under arrest," not before arresting him. (Pl.'s Ex. 3, Ottomanelli Dep. at 12: 14–15.) Later in his deposition, when asked if he spoke to anybody after Montina identified Jean, Ottomanelli replied "I had a discussion with Mr. Francese [sic] in regards to what had taken place, I informed him that Mr. Jean was going to be placed under arrest..." (*Id*. at 13: 15–19.) On the basis of the depositions alone, it is unclear to what extent Ottomanelli spoke with Jean. Jean further argues that Ottomanelli failed to review the written statements made by Montina, Dean Franzese, Jean, or Jean's English teacher, and he failed to interview any eye-witnesses despite the availability of those statements and despite his knowledge that there were witnesses to the altercation. (Pl.'s

Mem. at 9.) Ottomanelli knew that there were at least three other students in the restroom where the fight happened, yet he did not corroborate Montina's accusation by questioning anyone else–including the alleged aggressor.

This Court agrees with the City that Ottomanelli was under no duty to review any written statements because he did not know the statements were available. Ottomanelli was similarly under no duty to talk to other available witnesses, although in retrospect it would have been advisable to do so. The only relevant question is whether Ottomanelli deliberately disregarded information known to him at the time of the arrest–and not whether he deliberately disregarded the opportunity to discover more information before making an arrest. Jean devotes most of his argument to painting a fuller picture of the events that happened leading up to the fight with Montina in the restroom. But the Court can only evaluate those facts known to the arresting officer at the time of arrest. Even though Jean's allegations that Montina interrupted his class earlier in the day to threaten him (Defs' Ex. B., Jean Dep. at 22: 5–13) strongly support a self-defense claim, Ottomanelli simply did not know about these circumstances and was under no duty to find out.

The only facts available to Ottomanelli when he arrested Jean were (1) Dean Franzese's report that Jean and Montina had been in a physical fight, (2) Montina's black eye and his identification of Jean as the attacker, and (3) Montina's mention of the missing phone; there were no exculpatory facts for Ottomanelli to deliberately disregard. When there are no affirmative facts before an arresting officer that establish self-defense, an officer who directly observes injuries and has the suspect identified by the injured party has probable cause to make an arrest. *Jocks*, 316 F.3d at 135 ("just as probable cause may exist although a suspect is in fact innocent,

probable cause may exist where the police do not know of the existence or validity of an exculpatory defense."). Ottomanelli's probable cause to arrest Jean for robbery, assault, and criminal possession of a weapon is unaffected by the grand jury's ultimate indictment on only assault. *Phillips v. Corbin*, 132 F.3d 867, 869 (2d Cir. 1998) (failure to indict does not mean no probable cause as a matter of law). Unless there is some reason to doubt the credibility of a putative victim, an officer may rely on his direct observation of physical injury and identification of the assailant. *See Singer*, 63 F.3d at 119.

***

In retrospect, Ottomanelli should have taken the circumstances presented to him–a fight over a missing cell phone among high school students, unwitnessed by the dean who phoned the police–and concluded that asking both boys for their version of the events would give him a better idea of what happened. Although he was under no duty to do so, quickly corroborating Montina's allegations by interviewing Jean and other available witnesses would have given Ottomanelli a better understanding of the altercation and given Jean the opportunity to share his side of the story. Simply asking a few more questions to get a more complete picture might have even saved Jean from the burden of undergoing stressful and time-consuming prosecution. Hindsight, of course, is 20-20. But the law does not require hindsight, let alone a perfect investigation prior to establishing probable cause to arrest. On these facts, there was nothing constitutionally infirm in Ottomanelli's investigation, and therefore he is entitled to qualified immunity at the very least.

   III.   Jean's Malicious Prosecution Claim

Jean also brings a claim of malicious prosecution against the City, arguing that Ottomanelli initiated the criminal proceeding against Jean without probable cause. Under New York law, "a plaintiff must prove: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) a favorable termination of the proceedings; (3) lack of probable cause for commencement of the proceeding; and (4) the defendant acted with actual malice." *Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 369 (E.D.N.Y. 2008) (citing *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). In addition to these state law elements, a malicious prosecution claim brought under § 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000); *Morgan v. Nassau County*, No. 03-cv-5109, 2009 WL 2882823, at *7 (E.D.N.Y. Sept. 2, 2009). "[T]here must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (citing *Singer*, 63 F.3d at 117). As with the false arrest and false imprisonment claims, the City is entitled to summary judgment because Jean has not shown any genuine factual disputes over the elements of malicious prosecution.

The parties do not dispute that a criminal proceeding against Jean occurred on June 8, 2007, in the Kings County Criminal Court, (Defs' Ex. C., Hr'g Tr.), and those proceedings were terminated in Jean's favor on September 21, 2007, when he was acquitted. (Pl.'s Ex. G, Certif. of Disp.) "An acquittal is the most obvious example of a favorable termination." *Russell*, 68 F.3d at 36. Here, Jean was acquitted after a criminal trial on September 21, 2007. Thus, Jean has established the second element of the malicious prosecution claim.

As to the first element, Jean presented no evidence to support his argument that Ottomanelli initiated or continued the criminal proceeding against him. Jean argues that Ottomanelli's filing of charges suffices to show that Ottomanelli commenced the criminal proceeding against him. (Pl.'s Mem. at 14.) However, the cases that Jean cites involve officers who had allegedly created and forwarded false information to the prosecution. *See Ricciuti*, 124 F.3d at 129 (plaintiffs alleging that officers had knowingly fabricated and distributed a false confession to prosecutors); *Jovanovic v. City of New York*, No. 04-cv-8437, 2006 WL 2411541, at *9 (S.D.N.Y. Aug. 17, 2006) (plaintiff alleging that officer had created and forwarded false information and supplied false testimony at the grand jury and at trial). Jean also argues that Ottomanelli's failure to interview other witnesses or review the available written statements is comparable to fabricating false evidence. (Pl.'s Mem. at 15.) A deficient investigation, without more, is not fraudulent police conduct. *See cf. Jocks*, 316 F.3d at 138 (summary judgment precluded on a malicious prosecution claim when there was sufficient evidence to support an allegation of a police-fabricated statement). Absent any evidence that Ottomanelli created or forwarded false evidence, or otherwise engaged in fraudulent police conduct, Jean has not shown a genuine dispute over whether Ottomanelli initiated or continued the criminal proceeding.

Jean also argues that Ottomanelli's failure to provide allegedly exculpatory evidence during his testimony before the grand jury is sufficient to show that he commenced or continued the proceeding. However, this argument overlooks that "the judicial proceeding is not deemed to have been commenced until the plaintiff's arraignment or an indictment by the grand jury" in warrantless arrest cases. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). Furthermore, "the chain of causation between a police offer's unlawful arrest and a subsequent

conviction and incarceration is broken by the intervening exercise of independent judgment."
*Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *see also White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) ("The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution, thus defeating grounds for liability under this initial prong of the common law standard."). Here, Jean has failed to present any evidence to rebut the City's assertion that the Assistant District Attorney independently decided to prosecute Jean. Instead, Jean only argues that since the prosecution relied entirely on Ottomanelli's investigation, Ottomanelli can also be said to have continued the criminal prosecution. (Pl.'s Mem. at 15.) Without a showing that the witness withheld, misrepresented, or falsified evidence, or otherwise acted in bad faith, a prosecutor's reliance on a witness's testimony does not make the witness liable for malicious prosecution. *Rateau v. City of New York*, No. 06-cv-4751, 2009 WL 3148765, at *9 (E.D.N.Y. Sept. 29, 2009). Jean has not provided any evidence that Ottomanelli acted in bad faith. Accordingly, Ottomanelli's testimony at the grand jury, even if based on an allegedly incomplete, but not fraudulent, investigation, is not enough to show that he initiated the criminal proceeding against Jean.

Even if Jean had established that Ottomanelli commenced the criminal proceeding against him, the City is entitled to summary judgment on the malicious prosecution claim if there was probable cause for Jean's prosecution. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."). In a malicious prosecution claim, the focus is on "whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be

commenced." *Mejia*, 119 F. Supp. 2d at 254; *see also Posr v. Court Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). "An indictment by a grand jury creates a rebuttable presumption of probable cause for a criminal proceeding." *Golden v. City of New York*, 418 F. Supp. 2d 226, 234 (E.D.N.Y. 2006) (citing *Rothstein v. Carriere*, 373 F.3d 275, 282–83 (2d Cir. 2004)). This presumption can be overcome by evidence that the indictment was obtained through "fraud, perjury, the suppression of evidence or other police conduct taken in bad faith." *Rothstein*, 373 F.3d at 283 (internal quotations omitted).

Here, Jean argues that the grand jury indictment was without probable cause because Ottomanelli's testimony was based on a deficient investigation. (Pl.'s Mem. at 15.) As explained above, however, allegations that Ottomanelli's testimony was based on an incomplete investigation does not show fraud or perjury and thus is insufficient to overcome the presumption of probable cause attached to the grand jury indictment. *Rothstein*, 373 F.3d at 283.

Next, Jean has not shown that Ottomanelli acted with actual malice. "Under New York law, malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotations omitted). While Jean has many complaints with the District Attorney's approach to the case at the grand jury proceeding and during the criminal trial, there are no allegations that Ottomanelli acted on any "improper motive" or that he even had any contact with Jean prior to this arrest. (Defs' Mem. at 10.) Jean has failed to provide any evidence that Ottomanelli acted with actual malice toward him.

Finally, although neither party directly addressed the fifth element of a federal malicious prosecution claim, the City is entitled to summary judgment because there is no evidence that Jean was subject to a post-arraignment restraint of liberty. To satisfy this element, a plaintiff has to show that his prosecution resulted in a violation of his Fourth Amendment right to be free from unreasonable seizure of his person after the commencement of a legal process, like an arraignment. *Singer*, 63 F.3d at 116–17; *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997). Unreasonable seizure may be shown if a person is taken into custody, imprisoned, or physically detained. *See, e.g., Washington*, 373 F.3d at 316 (citing *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980)). Restrictions on travel may also be sufficient to constitute a seizure within the meaning of the Fourth Amendment. *Murphy*, 118 F.3d at 946. Jean was arraigned on March 21, 2006, and released on bail that same day. (Compl. ¶ 13.) Jean has not alleged that he was further detained or restricted in his travel after his arraignment and release. Therefore, since Jean has failed to establish evidence showing unreasonable seizure, the City is entitled to summary judgment.

IV. Jean's Municipal Liability Claims Fail to Describe a Practice or Policy

There is no respondeat superior liability under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Hicks v. City of Buffalo*, 124 Fed. Appx. 20 (2d Cir. 2004). To hold a municipality liable, a plaintiff must allege a policy or custom beyond mere employment of the government actor. *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000). A municipal policy or custom is not limited to express rules and regulations, but may include widespread practices or indifference to ongoing abuse of constitutional rights. *See, e.g., Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003)

(actions by a final policy-maker constitutes official policy); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (failure to train or properly supervise employees). Even then, individual unconstitutional acts carried out by a municipality's employees may not alone make that municipality liable. *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir. 1992) (requiring plaintiff to demonstrate that constitutional harm resulted from municipal policy or custom to impose § 1983 liability upon municipality). While no heightened pleading standard applies to § 1983 claims, a plaintiff must do more than state conclusory allegations of municipal policy and practice to bring a § 1983 complaint against a municipality. *Smith v. City of New York*, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003) (citing *Leatherman v. Tarrant County Narcotics Intelligence and coordination Unit*, 507 U.S. 163 (1993)) (dismissing claim when complaint said only "[t]he practices and policies of the New York City Police Department discriminated against Plaintiff with respect to the rights and privileges of citizenship"); *Perez v. City of New York*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (dismissing claim when complaint alleged only "[a]t all times hereinafter stated, defendants, their agents, servants and employees, were acting under color of law and pursuant to county policy and custom"). Finally, if it is found that the officers in question acted constitutionally, a city is not liable under § 1983 because it cannot be responsible for an unconstitutional act that did not occur. *Matican v. City of New York*, 524 F.3d 151 (2d Cir. 2008); *Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001).

Jean's fifth cause of action, alleging a respondeat superior claim against the City, is dismissed. As for any municipal liability, Jean has alleged no theory as to why the City is responsible for Ottomanelli's actions. The extent of his claim against the City consists of alleging that Ottomanelli violated Jean's constitutional rights "under the unlawful and injurious

policies, customs, and practices of the City of New York and its Police Department." (Compl. at 7, ¶ 33.) Without more, this allegation cannot support a § 1983 claim.

## V. Jean's State Law Claims are Procedurally Barred

Finally, the City argues that Jean's pendant state law causes of action must be dismissed because Jean failed to file a notice of claim within 90 days after the incident giving rise to his claims. *See* N.Y. Gen. Mun. Law § 50-e(1)(a). Jean claims that he was falsely arrested, falsely imprisoned, and maliciously prosecuted by a New York City Police Officer in violation of the New York State Constitution and New York State common law. (Compl. ¶¶ 22, 25.) In New York, state tort law claims asserted against a municipal defendant require filing a notice of claim as a statutory condition precedent to suit. *Shakur v. McGrath*, 517 F.2d 983, 985 (2d Cir. 1975). State-law claims brought in federal court must comply with this procedural requirement. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

In false arrest and false imprisonment actions, the 90-day period begins the day the plaintiff is released from custody. *See Morgan*, 2009 WL 2882823, at *14 (citations omitted). A plaintiff's malicious prosecution claim accrues on the date the criminal charges against him were terminated in his favor. *Id.* In this case, Jean was arrested on March 20, 2006 and released from jail at noon on March 21, 2006. (Pl.'s 56.1 Stmt. ¶ 27.) Jean was acquitted of the assault charge on September 21, 2007. (Pl.'s Ex. G, Certif. of Disp.) Jean never filed any notice of claim for either his false arrest or false imprisonment claim or his malicious prosecution claim. The Court therefore must dismiss Jean's claims brought under state law.

CONCLUSION

For the reasons stated above, the City's motion for summary judgment is granted.

**Dated:      October 22, 2009
            Brooklyn, New York**

/s/ _____
              **Ramon E. Reyes, Jr.
              United States Magistrate Judge**